oral argument beginning with the United States v. Saldana Rodriguez. Mr. Lynch, you're presenting for both defendants, I believe. No, I'm not. You're not? Okay. No. I mean, I don't think there's any way I could do that. One, I'm not appointed, but two, I think it would be inappropriate. I mean, obviously, I've read Ms. Keller's brief, and I may have thoughts on it, but I am not appointed to represent him. All right. But you can comment on both briefs if you want to. Okay. If you have thoughts, maybe we ask you. No, no, no. I think that would be entirely wrong for me to do that, Your Honor. Well, I have some thoughts about sentencing generally, so I may ask them, and you can choose to answer or not. If they're very general, and I think I can do that, I don't believe I can address this case. It was not my understanding when I came over here that that was part of the process. Okay. Since he's entitled to his individual defense attorney, and Ms. Keller is his attorney, and Ms. Keller has briefed it for him. All right. So I don't mean to be difficult. No, that's fine. Go right ahead. Okay. May it please the Court, here, for Mr. Saldana, obviously, I think that most of what can be said in this challenge to the sufficiency of the evidence has been said in the briefs that I filed. We argue that the government failed to prove the knowledge elements of the charge, conspiracy, and substantive methamphetamine offenses. This is a hidden drug case. Methamphetamine was in the diesel tank of a tractor with a trailer that drove into the port of entry in Laredo. The rig was driven by Noe Martinez. Because the meth was hidden, this is not a control of the vehicle case. The government had to show something more. And the jury was properly instructed on that. Yes. They knew they had to find a plus factor. Yes, yes. But just because the jury's instructed and we give a presumption that they followed. So if there is a suspicious extra factor, then we defer to the jury verdict. Well, I don't like the word suspicious. Well, what's the exact instruction? What's the language of the instruction? Additional circumstance, evidence of a suspicious nature. Yes. Okay. You didn't object to that. There was no objection made to that. Okay. So we're looking for, is there something else suspicious? I think we're looking for something else that indicates knowledge. That something that's merely suspicious isn't enough. Because I think when we use that language, and I understand it's in there, but I think that the cases tell us to look for a little bit more than something that's merely suspicious. Because I fear that merely suspicious gets us awfully close to guilt by association. Well, he's hanging out with bad guys. I assume, I honestly don't remember. In closing argument, that's what most of the argument was about for your client. That was the entirety of the whole case, really. There were essentially no real objections at trial. So in the light most favorable to the jury verdict, they had different stories about the trip. There was the weirdness about the checking the fuel, right? Then there's a cooperating co-defendant, what's his name, Garza? Garza, yes. Who talks about the messages, and the messages have some weird words in them. That's sort of the amalgam of... But Garza's talking about his own. Right. But he ties it to the thread, the Allen in the thread. He ties it to Allen, and no, he is tied, Mr. Martinez is tied to Allen. But I don't think that Mr. Saldana is shown to be interacting with Allen. I think the government may overstate, and this is that record, I think 893, I'm getting old, it's between 893 and 895, is when they talk about the stick, Mr. Saldana says yes, they used the stick to check the fuel, and Agent Flores uses the indistinct pronoun they. But when he talks about Noe saying he was instructed to use the stick to check the fuel, he says Allen told him. So we know Allen talked directly to Noe about that. And so I think the government overstates some. So I think the mere fact that even if Mr. Saldana was aware and even helped check the fuel with the stick, that was just something about how that truck operated. I think the point is he was not instructed. And I think that's the point with the WhatsApp messages too. I don't think they tie him closely enough to being instructed by Allen, as opposed to talking with his friend and fellow truck driver. And I would note that Agent Flores said that the messages, he acknowledged a couple different times, the messages did not mention drugs. And I think this is important about, maybe go to the suspicious part, Your Honor, is Agent Flores says, and this is at 9-12, going on over 9-13, I believe that they believe that these conversations are hiding it. And his belief about somebody else's belief, that doesn't sound like proof to me. Other circumstances, and again, I understand in the end you look at most favorable to government. I understand that, Your Honor. But it is my job to point out what's a little different about this case. Mr. Saldana did not display any signs of nervousness, even though this investigation was very long. They were detained while they investigated the truck and took the tanks off from 530 p.m. to 230 a.m. Then he was held for another hour and a half, two hours before Agent Flores talked to him. And yet there's no evidence of any nervousness in that time. But there is evidence that maybe Martinez was nervous as he came into the port of entry. So that's a difference between them. There's also evidence that the cash payments were different, which is some evidence that Mr. Saldana didn't know. And so I think the story also that you mentioned, Judge Higginson, this kind of comes down to a consciousness of guilt. I've never read Laro. Yeah. And, you know, I listened to the Ombank argument from a couple weeks ago, and I wish I could be like the amicus and urge you to underrule yourselves. Or I could stay the case for 17 years because maybe they'll reverse Gonzales versus Raich. But as an actual representative, I can't do those things. So what I would say is I think that even if Lara says, and it does, that consciousness of guilt can be sort of general, that there's not the same sort of evidence here. There was a lot of evidence of consciousness of guilt in Lara. They lied about being sisters. They lied about the two vehicles traveling together. Most of our hidden compartment cases relate to the driver. In your point, it's the passenger. Was he nervous? Did he show nervousness? No nervousness at all. That's what I was saying, Your Honor. Basically, it was held for like 12 hours between the detention and the . . . Some of the government, the special agents, were they qualified as experts? Yes. Okay. So are you familiar with the Supreme Court last June in the Diaz case? Yes. You know that? Yes. And that was reversing our law. Yes. Case I wrote.  Okay. So did the expert testimony at all say, oh, I do this all the time and these mules would have known? Well, they always say that. But did they say it in this case? Is that an additional factor? Because I didn't see it in anyone's briefs. I don't think he said it in that way. He said rather, and this is why I think the statement of 9-12, 9-13 of I believe, they believe is important. Because he's really undercutting his own testimony there. Because it's not about belief. They get a big pass when they come in as an expert and say all sorts of things. And he says, oh, people use code words and everything. But I believe, they believe doesn't strike me as actual testimony about . . . But did Special Agent Cardone, I just don't know, did he testify . . . Condom.   Okay. No, good. I was myself confused. Sorry. Did he testify, based on all my past experience, these two people would have known what's in the divided fuel compartment? I honestly don't remember that. That would be a problem if he said that. Yeah, that would be a problem if he said that.  Yes. So, again, I don't have all that much more than what I said in the briefs, Jonah. Okay. Well, I'm curious, what did your client get, the sentence? 235 months. Was that low end? Is that what? Was that the low end? That was the low end of the guideline. Okay. Did he allocute at sentencing? I honestly don't remember at this point, because I did not . . . He didn't get acceptance of responsibility, right? No. Did he get a safety valve? What's that? Did he get the safety valve? No. No. Okay. So, a district court can inquire into . . . and we're just talking about your client. Hey, you went to trial. I don't think you get the acceptance of responsibility, correct? Oh, yes. Absolutely. And you went to trial. I'm not going to give you the safety valve. No problem there. You went to trial and you were found guilty, and I don't think you're showing remorse for your victims. As to your client, would that be a valid statement by a sentencing judge? As to your client, who was sentenced, can a court enhance because of lack of remorse? I do think this puts me in a very awkward position, Your Honor. Okay. So, you don't want to answer the question? You're asking me to answer what . . . I'm asking about your client and the sentence your client got. I understand that, but because the judge addressed them both in the same manner, it's very difficult for me to see how I can answer that question without in some way stepping on . . . Okay. That's fine. Back on the sufficiency, the government's saying you didn't preserve it, and the record's a little bit imperfect. Do you want to speak to that? The record . . . Were you trial counsel below? No, I was not. The record is imperfect. That's a good way of putting it. The docket sheet does say that there was a bench conference, the Rule 29 was denied. In the Southern District, they use electronic recording. I mean, all I can assume is somebody forgot to hit the button in time, but the docket sheet says it. And generally, this Court has some law, which I found in the last couple days, but that's not fair, Rule 28J. But there is law in this Court that things in the docket sheet that represent what occurred are considered to be an accurate record. Not the content of an order or a judgment, but what occurred, this Court gives credence to. So even if we assume that a bench conference was held and the Rule 29 motion was brought, how do we determine whether or not it was general or specific? That's a good question, Your Honor. I mean, I guess we can't. Do we have to? I think that what we know from the argument is if it was specific, it had to be about knowledge. At this point in the evolution of Rule 29 law, I do not know why any defense attorney would ever make a specific Rule 29 motion, because then you're found to have waived everything. And so the better practice, in my opinion, is always to make a general one, but to the extent it would have been specific, it would have been on knowledge, and I think we know that from the closing argument, because that was the only thing they contested was knowledge. The rules allow you to supplement the record if it's incomplete. Rule 10, you could ask the government if they have an objection. You could talk to both prior counsel. I mean, it's sort of a fact that you just haven't done that. I probably should have, Your Honor. I think that's on me. Well, maybe on the government. They're the ones taking the position that the record, I guess that the district court somehow fabricated the record here, so we'll hear what they say. Well, yeah, I don't think they're saying that. Well, the record, the docket sheet says Rule 29 arguments were made and for the reasons denied. So someone working for the district court must have mistyped that. I guess that's the government's theory. Well, I think that's a slightly different theory than you are for the first time. I think that what they're saying is, and what I'm suggesting there is some case law out there, is that it's an accurate record of what occurred, and the court generally accepts that. I think what they're saying is, no, it has to be more fully on the record. I shouldn't be making the argument for them, but I don't think she's accusing anybody of it. Okay, it has to be more fully on the record, okay? A district court types into its minute entry that Rule 29 arguments occurred and were denied for the reasons stated? I don't think it has to be more clear than that, but I think that's their position. But to the extent that you were suggesting that they were suggesting somebody did it purposefully, I don't think that's right. But your point does raise what I think pretty much has to be true. You've got that person running the tape recorder, and that's also the person who's working behind the desk for the district court, and I think they just forgot to push the button, but they're also typing in what's going on for the judge. I think that's likely what happened in this, and I don't think that's reason to change the standard of review. Thank you, Your Honor. All right, so a question I sometimes ask counsel, so how many Fifth Circuit arguments have you made? Well, Your Honor, I didn't start a list until this century, and as you know, I go back to last century. You were the first judge appointed after I started here. And so I think it's about 95. It's also, unless something unusual happens, likely to be my last. I have stopped taking cases, and I'm going to move on to the next phase of my life. But it's been a pleasure. Well, you still get rebuttal. You're not done. You're coming back up to that podium in just a few minutes. That's correct, but I didn't say it was going to be my last word. I said it was going to be my last, likely to be my last argument. So we had a lawyer yesterday. I asked a question. He said it had been 110 for him, so you've got a little bit of catching up. Oh, there's a lot of people I can catch up to, but I decided maybe I'll try something different. Thank you. But it's been fun over the years. Good. Thank you. You've saved time for rebuttal. Okay, Ms. Pick. Good morning. May it please the court, Katherine Pick on behalf of the United States. This court should affirm Mr. Saldana's convictions. Ample evidence supports Mr. Saldana's knowledge that he knew he was transporting methamphetamine into the United States. We have his website. Why don't you start with what is your position as to the standard of review? I believe the standard of review is plain error because we don't have in the record the arguments that they preserved. They made a Rule 29 motion. I don't think that's sufficient under the federal rules of appellate procedure 10. But the docket entry says Rule 29 arguments made, denied for the reasons. So you're saying that was just a mistake? Oh, no, Your Honor. I think it could have. Maybe it happened. Maybe it's missing. Maybe. But this is huge in terms of the consequence. A standard review, a normal Jackson review of evidence of sufficiency, they've got a fighting chance. They've got no chance if they didn't preserve the objection. And the government has asserted and only argued they didn't preserve it. Yet when you look at the docket sheet, it sure looks like the district court said, I heard Rule 29. Correct? And the transcript says earlier, the defense attorney, I want to argue 29. District court twice says, wait. So I'm a little startled you can hear that the government is here saying they didn't preserve it. You had equal opportunity to supplement the record. Yes, Your Honor, but it's my position that it's also their burden as appellant to make sure. Well, the government's got a burden to make sure justice is properly applied. And for the government to say something wasn't preserved when we've got a record that the district court says it was argued, you would think the government would inquire more. As an officer of the court, did you talk to the line assistant attorney who handled this case? I did not talk to him about this specific instance. You wrote the brief and you didn't ask them about the position that the defense attorney never argued Rule 29. But yet you wrote the brief saying that they didn't. I, Your Honor, my position is based on the record. There is no, there is nothing that this trial counsel, Mr. Saldana, preserved. Okay, but I'm asking you a very specific question. You wrote a brief to defend a conviction that some other AUSA wrote. You did discuss it. Presumably that AUSA read the brief. Yes. Okay, and so in the discussions and in the other AUSAs reading the brief, it was never said to you, actually, he did argue it. No, he did not say that. One thing that, Your Honor, that I also put in my brief that if this court finds it just sufficient based on a docket entry that it was made, then under abusive discretion we would still prevail under that. Okay, did you preserve, remind me, you didn't know your brief. Did you preserve the secondary argument? Because if we disagree and say they did preserve it, I didn't see the government actually arguing that you should win. Yes, Your Honor. I include in a footnote that under either standard of review that this court decides that we would prevail. So in a footnote you say you should still win. Do you do any analysis shorn of the plain error review? Do you analyze it at all? Yes, I analyze it under that there's sufficient evidence meeting the standard of review under abusive discretion deferred to the jury verdict. Yes, Your Honor. Okay. I'll take a look. Yes. I believe under either standard of review this court is free to choose and apply which one. I think under either one that the government wins. I believe it's Mr. Lynch's burden as appellant who, if he is asserting that his client did preserve his objection, that he has evidence. I don't think a docket entry is enough evidence. But as I said, under either standard of review, I believe there is ample evidence to support Mr. Saldana's convictions. Going to the evidence itself, we have the WhatsApp messages. We have his statements to Agent Flores. We have circumstantial evidence. All of that proves that he knew that he was transporting methamphetamine to the United States. What is your best evidence that an entry put into the docket by a court is not sufficient? When I was researching, I didn't find any case law that was specific on this. I just relied on the rules of appellate procedure that it's their burden to make sure that the transcript is properly submitted if they're relying that they have preserved an objection. But I think, again, under either standard of review, whether this court says, you know, I think that's sufficient. When you're researching the law, just so I understand, you're researching the law to say they didn't do something that the record shows that they did do. And you didn't ask the line attorney whether what you just didn't discuss this as you wrote this brief? It wasn't a no, Your Honor. We didn't discuss it because, again, we said, you know, yes, there's a docket entry, but there was nothing in the transcript at all that showed that they did make this argument. You're right. That AUSA was there. He would know. Yes. So if you did file a Rule 10 to supplement the record, we would either know that the government position in the brief is just flat wrong saying this never happened. If someone were to just ask the two people who were there, we would know for sure. Your Honor, I'm not familiar with exactly how the transcript works in terms of, you know, the clerk pressing the button and all of that. I think it was trial. I think they were, you know, the chaos of all of it that maybe it just the court reporter didn't press published or maybe I'm unclear as to what had happened. The trial, AUSA did read the brief. He didn't have any statements as to that because, again, I said under either one, you know, I think we would win. So if this court, yes, finds that a docket entry is sufficient, then implies the abuse of discretion standard. I still don't think Mr. Saldana can overcome his high burden of showing that the jury got it wrong. As to Mr. Martinez, you know, realizing counsel isn't here to advocate for her client, I'm hesitant to get into the weeds of the topics of his specific challenge given his Sixth Amendment right to counsel and counsel's not here. So since she's resting on her briefs, I would rest on my briefs on this issue as well. What's the government's position on sentencing? Is it a district court can, has to inquire into whether a defendant has accepted responsibility, right? Yes, Your Honor. And has to inquire into whether the safety valve, both those involve a little bit assessing what's the defendant's position here in the larger litigation? I believe that's correct. Okay, so then you get into trickier territory. If a defendant pleads guilty, so they would normally get acceptance responsibility, there's going to have to be an assessment at that point into did they fully accept responsibility. But this is a case where a defendant asserted innocence, went to trial. District court didn't give either defendant acceptance responsibility, correct? Correct, Your Honor, because they went to trial. What's the government's position generally as to whether a district court can comment on a defendant's remorse at sentencing? Fair game or improper territory? I believe it's fair game, Your Honor. Okay, but that wasn't what was done here, remorse. Here it gets closer to innocence. Would you agree that under the LACA case, a district court can never say, I'm going to enhance your sentence because you didn't confess? Right, Your Honor. I think that would be inappropriate. And here this wasn't, again, I want to be cognizant of Mr. Martin. I'm just asking what the government's position is. This situation occurs in almost every criminal sentencing. When a defendant's gone to trial, and then there's a dialogue because they allocute, and the district court asks, what do you think, what of that? Often you get into the world of you haven't shown remorse, which is getting close. So I'm wondering if in your head you know there's a bright line rule. Do you think it's the LACA rule? What a district court can never do is say, you didn't confess, so I'm going to enhance. Is that the bottom line? I think that would be inappropriate to try to get a defendant to confess and then use that as a way to enhance his sentence. That's LACA, isn't it? Yes, Your Honor. I think in this instance, you know, Judge Saldana did not, as stated in my brief, didn't hold that and punish or hold it against him or use it as an adverse way to enhance his sentence. All right. Thank you. All right. Mr. Lynch, your vote. I don't have much. If the court doesn't have questions, I would say that the court's law is, although as you may remember from many of my briefs for 30 years, I disagree that the standard rough review changes, but in this case, it's favorable to my client, and so I have to say the law of the court, whether or not I agree with it, is that Jackson v. Virginia is not a substantive rule, but it is a standard of review, so the standard of review would change, Your Honor. And so it is important, as you point out, that if there is a record that a Rule 29 motion was made, then you look at it under the typical Jackson standard. Right. I mean, this is really important for you because there was a proper jury instruction. So whether it was preserved or not is a very important factor. Both counsel in front of us, as to what a district court allowed or didn't allow, have opportunity to file a Rule 10 motion. I doubt either side is going to oppose the other. You both have access to prior counsel. We'd get an answer. But it's up to one of you to confirm what actually did happen rather than speculate and assert a standard of review that's determinative. Well, I think the better practice would have been for me to do that. I would point out that, in my favor, that the record, the court record. Yeah, the court record stands for rules. And, you know, I certainly see no reason to doubt the docket entry. As I said, there is law from this court that says the content of the docket entry as to what happened is something we accept as a court record. There have been people that come in and say, well, they meant to order this, or the judge did order this. And the court will say, we don't judge the content by a docket entry. You have to show me something that the court signed. But what actions the court took as a historical record, the docket sheet is considered accurate. So I would suggest that it is sufficient in this case. And I would ask that you reverse the convictions. Thank you, Your Honor. Thank you, Mr. Lynch. And I'm glad it came up just by accident about your career. But we congratulate you for your long service as an officer of the court and wish you well in whatever you should decide to do. I appreciate that, Judge Smith. I really have enjoyed it. It hasn't always been easy. Judge Higginson has certainly contributed to that. It's hard to keep up with you. I mean that in a good way. But I appreciate it, Your Honor. Thank you. Your case is under submission. The remaining case for today.